PeaRsoN, O. J.
The writ ip this case was returned .before me ac Richmond Hill. As it presented a new‘question, I desired to have the aid of Judge Battle and Judge Manly at the hearing, and also the benefit of argument by counsel. ■ For which purpose it was adjourned to this place. I regret that I have been disappointed.' It becomes my duty to. decide the case without the presence of the other Judges, and without argument, except by Mr. FurchesandMr. Winston in behalf of the petitioner; so that I am really not apprised of the ground on which the Governor .rests his claim of authority.
The petitioner is’exémpted as a conscript by reason of r substitute* and is exempted from duty aS a militia-man by force of the 1st section of the’ act of the last session of the Legislature, entitled “ An act in relation tó the militia and a guard for home defence.”- Major Harbin sets out in his return to' the writ, that he had the petitioner arrested under ah order. of the Adjutant General for the purpose-of arresting conscripts and deserters, "as said Austin was a member of the Home Guard and liable to perform said duty.” The order is in these words :
“Raleigh, Sept. 15, 1863.
Major A. A. Hart>in will immediately call out the.Home Guard of Davie county, and arrest every deserter or.re-cusant conscript within said county, and. deliver them to Col. Mallett at Camp Holmes. If it be necessary, you can pursue said deserters beyond the limits of jour 'county. Those citizens who aid, harbor, or maintain deserters .will be arrested and bound over to the Courts to answer said charges. You will report to this office the manner in which.-this order has:,been executed.
By .order,.of G;ov. Yaítoe:
J. -H, FOOTE. A. A. Gen.”
*161 Tho question presented by tbo petition and return is of ¿rent importance. On.the one hand, if the Governor is authorized to require the Home' Guard to perform the ser--' vice of arresting deserters and conscripts, it will promote tho efficiency of the Confedérate army — on the other hand, it will impose on citizens, who by the acts of Congress únd the Legislature are exempted from conscription and militia duty, a dangerous and irksome labor.-
The subject must be considered by" a Judge “■ as a dry question of law,” unaffected by collateral considerations growing out of the condition of our country, and for this reason, his conclusion may differ from that of those who are at liberty to look at it under the bias of a feeling.
It is a part of the duty of a soldier of the Confederate army to arrest deserters and recusant conscripts. The Governor of a State has certainly no authority to require a citizen, unconnected with any military organization, to perform this part of the duty of a Confederate soldier. Whether the Governor .had authority to require a citizen belonging to the militia to perforin this duty, is a question which has not been decided.^ It may be conceded that the Legislature has power to give this authority to the Governor in respect to the militia, on the ground that they were liable to be called into service of the Confederate States, and might be required to do a part of the duty, a3 a compensation for not being called into service and required to do the whole duty of a Confederate soldier. But, it is a question worthy of great consideration, whether the Legislature has power to authorize the Governor ,t'o require this duty of citizens who do not belong to the militia, which is the only military organization, except enlisted soldiers, recognized by the Constitution. It is not accessary for the purposes of- this case to decide the question, 'and it is referred to only for the sake of applying' the rule, “ where a power has never been before exercised *162 and is doubtful, the’Courts will 'not presume that it Svas tbe intention of the Legislature to assunje it, but will Require a clear expression of an intention to do so.”
The matter, then stands thus :• The Governor has no authority to require a citizen who does not .belong to the militia to perform this part of the duty'of a Confederate soldier — has the Legislature conferred the authority upon him? ' 'It is insisted that this is done by the act of'the last session entitled CK an act in relation to the militia and a guard for home defence which act and the act “ to punish aiders and abettors of deserters ” were ratified at the same time, íth July, 1663, and are to be construed together. So the question depends upon the meaning and proper construction, of these two statutes.-
At the meeting of the Legislature two questions were .pending: First, Congress in its wisdom having allowed substitution and many other exemptions from the com* seription acts, was it in the power of the President, by calling upon the State for its quota of- militia, to subject the persons so exempted as conscripts to military duty as militia ? Second, had the Governor authority to require the militia to arrest conscripts and deserters from the Confederate army ? By the first section of the act “ in relation to militia.and a guard for home defence,” the first ' problem was solved, and it is enacted that all persons exempted as conscripts shall be likewise exempted from service ás militia. By the third section of the act (C to punish aiders and abettors of deserters,” it is enacted that the Governor may require the militia to arrest deserters and conscripts ; thus solving the second problem, by authorizing the .Governor to call out the remnant of the militia, that is, those, not exempted from militia duty, to perform a part of the duty of Confederate soldiers, to-wit; the officers of the militia and the men between 40 and 45 who had not then been called for as conscripts,,
In order, however, to provide for • home defence, the* *163 Legislature assumed the' powór of making State conscription. Whether the Legislature had the power to do so, is a question into which it is' not necessary to enter. The power is expressly assumed, and it does not become a co-ordinato branch of the State government to decide upon i L, unless it be necessary to do so in order to dispose' of a case before it. it may be granted that the Legislature had power to organize for home defence ■ a military body composed of the remnant of the militia, the exempts and persons over the age, liable to militia duty. It is very certain that in doing so, the intention was to make this now body wholly distinct and different, from the militia. Persons exempt- from militia duty are included, new companies are formed, new officers appointed — in fact every thing is different, it is a new organization — a State conscription made for special purposes, “ to be called out against invasions .and to suppress insurrections;” section 6. A«.d special care is taken to distinguish this new body from militia, for otherwise they might, under the Constitution, he called'for-by the Confederate States. Upon what ground', then, can it ho insisted thdt the Governor is authorized to require this newly organized body and peculiar State institution, to perform a part of-the duty of Confederate soldiers? It is said the’ authority follows as a consequence of tho military organization. I cannot see the force of the argument. In the' act cle-. daring the special purposes for which this new organization is made, no such authority is expressly given to the .Governor — the power of the Legislature.to confer it, even if such had been the intention, is by no moans clear, and-so we are not at liberty by implication to infer that such was the intention , and the act “ to punish aiders and abettor's of deserters ”' puts the matter, as it seems to me, out of tho range of discussion, by expressly- authorizing the Governor to use the militia to arrest deserters and con-' scripts’; thereby excluding, im plainly as words could do it, *164 any authority to require Such service of this new organization — the State conscripts, Home Guard. Expressio wnius, exclusio alterfys, is a well established rule of construction which the Courts are not at liberty to disregard, and its soundness, when the object is to ascertain the indention of the Legislature, and neither to fall short of it or go beyond it, is fully illustrated by $iis cáse. So, the two statutes relied on as conferring the authority on the .Governor, actually exclude it by a double implication. In the first place, the act authorizes the Governor “ to call out the hpme guard against invasions and to suppress insurrections.” Why was it not added “ anti to arrest deserters and recusant conscripts,” if guch wag the intention ? That subject was present to the minds of the Legislature. In the second place, the act authorizes the Governor in so many words “ to call out the militia to arrest deserters and conscripts.” Why did it not add, and “ also the home guards,” if such was their intention ? The .conclusion that it was not .the intention of the Legislature that the Horne Guards should besubject to this service, is as-clear as if the acts contained the word “ provided, however, that the Governor shall not have authority to require the Home Guards to arrest deserters and conscripts,” unless it be contended .that the Governor has all power except such as is expressly prohibited — a position which, I suppose no man will venture to assume.
The argument ifiay be stated thus : The s:atute expressly authorizes the Governor to require “ the militia,” •that is, the officers and the men between 40 and 45,to arrest .deserters. They form a part of the Home Guard. It follows, that the Governor had^no authority to require the whole Body of the Home Guard to perform this duty.; for, if ho had such authority; it was vain, idle and superfluous to authorize him expressly to require a part to do that which he had authority to require of the whole. In this connection the provision, section 9, “The com *165 •missions of fclie officers of the militia shall be ¡suspended only during the period of their service in -the Home Guard/’ has an important bearing, the object being to preserve the organization of the militia and to use them to'arrest deserters ; for which purpose -the force was then, adequate.. The fact that, afterwards, the call for the men between 40 and 45 as corfseripts, made the force inadequate, cannot change the meaning and ^proper • construction of the statutes. If an amendment was thereby made necessary, the Legislature must make it; for neither the Governor nor the Judges have authority to strain the law to meet the emergency.
I am aware of the responsibility under which I act. Jurisdiction is given to a singlé Judge in vacation — my decision fixes the law, until it is reversed by the- Supreme Court, ors.tbc law is amended by the Legislature; and I would not feel it to be my duty .-to stay the action of the Executive, except upon the clearest conviction.
Whether, in the event the Governor should'call out the Home Guard to repel a raid or suppress an insurrection, he would not, while the men were on this tour-of Service, which is limited to three months, (sec. 6,) have authority collaterally to require them to take up deserters, and con.scripts, who might aid the enemy, is a question not now presented. We are confined to the naked question, Has the Governor authority to' require the Home Guard to be called out for the mere purpose of arresting deserters and conscripts ? The special order, under which Maj. Harbin acted, is for this purpose alone. It is true that the State was, before the passage of the acts, invaded, and the enemy was at that time and is now within the limits of our State ; but, as the order does not profess t© be made for the purpose of repelling that invasion, there is no “ tour of duty prescribed by the" Governor not exceeding three .months at any one time,” according to the provisions of -the 6th section. The time is unlimited and the purpose *166 is declared to be “to arres6 every deserter and recusant, conscript witliin the county of Davie, and deliver them to Col. Mallett, at Camp Holm.;»/'
The suggestion that, as the arrest of deserters and conscripts would promote the efficiency of the ConfecL'rate 'army,-and thereby tend to defend the iltate against invasion, the authority of the G.-ove--nor can be sustained on that ground, involves a latitude of construction' unsupported by any principle of law,, and, as it seems to me, cannot impress, with much force, tbe mind of any one who will real] the two statutes attentively and in connection. He will see, from the mode of defence contemplated by the Legislature in calling out the lióme Guard for de-fence against invasion and insurrection, by regiments, battalions and .companies, on tours of duty witliin tbe State, not to exceed three months, fac., that tljg indirect and far-off mode of repelling the existing invasion by are resting deserters and conscripts, was not in tbe mind of the Legislature, except when tbe .Governor was authorized to use the milüia for that purpose ; which, according to the view I have taken above, excludes the conclusion that the Guard for Home Defence — the Htatc conscripts — ■ were to be used for that purpose also. For, if so,-it was surely vain, idle and superfluous to, impose that 'service on the militia, who constituted but a small part of thg guard for home defence.
The position was taken on the argument that the order under consideration clearly exceeds the G-overnor’s authority, in this: It requires the guard for homo defence “to arrest and bind over to tbe Coürt, to answer said charges, those citizens who aid, harbor .and maintain deserters,” and is, therefore, void in toto. It is true, citizens who aid, &c., deserters, &c., although made liable to indictment by one of the statutes referred to, cannot, according to the Constitution and laws of the land, be arrested and bound over to Court, to answer the charge, by *167 'uilííaiy juilhoriiy -4hat c;¡u only be done by the civil authority, to wit: a warrant by a Judge or Justice of the Peace on probable cause shown on oath, and executed by the BbcriJ or Constable. - Co, it is clear that part of the order in void and against law. But it doés not vitiate the other part of the order, provided tbe Governor had authority, to make it.
It its thereupon considered by me that-Richard M. Austin ho i'ovtlnvifcb discharged.